**SCHNUR AND COHAN, INC., Plaintiff,**

v.

**D. L. McDONALD, t/a D. L. McDonald Construction Company et al., Defendants.**

**No. C-74-R-62.**

United States District Court
M. D. North Carolina,
Rockingham Division.

Aug. 1, 1963.

Jordan, Wright, Henson & Nichols, Greensboro, N. C., and Leath, Blount & Hinson, Rockingham, N. C., for plaintiff.

Helms, Mulliss, McMillan & Johnston, Charlotte, N. C., for defendant, Penn Controls, Inc.

EDWIN M. STANLEY, Chief Judge.

This is an action by the plaintiff, Schnur and Cohan, Inc., a New York corporation engaged in the business of manufacturing garments, to recover alleged damages to certain merchandise

while being processed by Hamlet Products Company, a North Carolina corporation, at its plant in Rockingham, North Carolina. It is alleged that the named defendants were negligent in the installation of a sprinkler system in the premises in question, and that such negligent installation resulted in the sprinkler system, on October 25, 1959, releasing large amounts of water onto plaintiff's merchandise.

The defendant, Penn Controls, Inc., has made special appearance and moved to dismiss the action as to it, or in lieu thereof to quash the return of service of summons, on the grounds that (1) said defendant is a corporation organized and existing under the laws of the State of Indiana, with its principal office and place of business in Goshen, Indiana, (2) is not subject to service of process within the State of North Carolina, and (3) has not been properly served with process in this action. The other named defendants have been served with processes and are properly before the court.

Jurisdiction is based on diversity of citizenship, and service of summons on Penn Controls, Inc., was made by serving the Secretary of the State of North Carolina, pursuant to North Carolina statutes for substituted service.

Since Rule 4(d) (7), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service of summons upon a foreign corporation is sufficient if served "in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state," we must look at the relevant North Carolina statutes dealing with service of process upon foreign corporations, and the interpretation placed upon these statutes by the North Carolina Supreme Court.

Section 55–144, General Statutes of North Carolina, provides as follows:

"Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served."

Section 55–145, General Statutes of North Carolina, provides, in its relevant portions, as follows:

"(a) Every foreign corporation shall be subject to suit in this State, *by a resident of this State or by a person having a usual place of business in this State,* whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

\*    \*    \*    \*    \*    \*

"(2) Out of any business solicited in this State by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the State; or

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers; or

"(4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

\*    \*    \*    \*    \*    \*

"(c) \* \* \* In any case where a foreign corporation is subject to suit under this section and has failed to

appoint and maintain a registered agent upon whom process might be served * * * then the Secretary of State shall be an agent of such corporation upon whom any process in any such cause of action may be served." (Emphasis supplied).

Since it is uncontroverted that the plaintiff is a New York corporation and has no usual place of business in this State, G.S. § 55–145, by its plain wording, has no application to the problem here presented. If jurisdiction is to be sustained, it must be sustained under G.S. § 55–144. The crucial question then is whether the defendant, Penn Controls, Inc., was *transacting business* in North Carolina prior to the institution of this action. We find some assistance in making this determination in G.S. § 55–131, dealing with the requirement of foreign corporations to procure a certificate of authority from the Secretary of State before transacting business in this State. This statute provides that a foreign corporation shall not be considered to be *transacting business* in this State by reason of carrying on in this State any one or more of the following activities:

"(5) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this State before becoming binding contracts.

\* \* \* \* \* \*

"(8) Transacting business in interstate commerce."

The validity of service of summons under G.S. § 55–144, as well as the satisfaction of due process, must be largely determined by a factual evaluation of the nature and extent of the business of the defendant, Penn Controls, Inc., in North Carolina before the institution of this action. From the affidavits, depositions, answers to interrogatories, and exhibits filed by the parties, it has been established that the plaintiff is a New York corporation and does not have or maintain an usual place of business in this State; that defendant, Penn Con-

trols, Inc., is an Indiana corporation with its office and principal place of business in Goshen, Indiana, and is engaged in the manufacture of thermostatic controls for heating and air conditioning equipment; that said defendant is alleged to have been negligent in the manufacture of a defective control used in a heating and air conditioning unit installed in certain premises in North Carolina where goods of the plaintiff were being processed, and in failing to inspect the control unit before shipment from its plant; that said defendant, Penn Controls, Inc., has never been domesticated in North Carolina, and has never maintained any office, warehouse or other place of business in this State; that said defendant, at all times pertinent, has had no agent, servant or employee residing in this State, but did have, for some years prior to the institution of this action, two nonresident salesmen who visited the State from time to time; that one of these salesmen, Harry S. King, a resident of Atlanta, Georgia, had sales responsibility for the defendant in four states, including North Carolina; that King came to this State every six to eight weeks, and called on manufacturers and wholesalers for the purpose of selling the products of his company; that King had some engineering background and worked for a time in the engineering division of his company, but his principal work consisted of checking the stock of wholesalers and seeing that they had a complete stock of controls on hand, and making sure that current catalogs were available; that he occasionally used his engineering knowledge to assist customers in determining what controls were needed for the products they were manufacturing; that the other salesman, Joseph B. Carmel, spent an average of twenty to twenty-six days per year in North Carolina for the defendant; that his activities in this State were substantially similar to those of King; that neither King nor Carmel accepted orders for products manufactured by their company, and neither had the right to quote firm prices, pass on the credit of whole-

salers and manufacturers, or enter into contracts on behalf of their company; that the engineering services rendered by King and Carmel were incidental to their main job of selling; that the defendant, Penn Controls, Inc., did not own any property in North Carolina, except goods shipped in interstate commerce from time to time, and accounts due from its North Carolina customers; that merchandise was never sold or shipped on consignment to consignees in North Carolina; that said defendant does not manufacture ventilating, air conditioning or heating units or systems, but only manufactures and sells controls to others for use in such units or systems; that the sale of the control in question did not arise out of any business solicited in this State, by mail or otherwise, by Penn Controls, Inc.; that said defendant has never at any time designated the Secretary of the State of North Carolina as its process agent; that said defendant did a business of approximately $20,000.00 in North Carolina in 1957, which increased to approximately $98,000.00 by 1960; that at least through 1960, said defendant maintained two service dealers in North Carolina, one in Burlington and one in Charlotte, through which it offered replacement service for its North Carolina customers; that all orders received by salesmen in North Carolina were subject to acceptance by defendant at its home office in Goshen, Indiana.

Under the foregoing facts, it is obvious that the principal activities of the defendant, Penn Controls, Inc., in North Carolina, consisted of soliciting orders through salesmen, which orders required acceptance at its home office in Goshen, Indiana, before becoming binding contracts. While the salesmen did some promotional work, and attempted to create good will for their company, and perhaps on occasions rendered engineering service or advice to customers, their principal and significant duties consisted of soliciting orders for acceptance at the home office. No employee lived in this State, and the defendant owned no property in this State.

Many of the authorities upon which plaintiff relies are decisions of the North Carolina Supreme Court dealing with G.S. § 55–145, which statute, as earlier noted, is not available to the non-resident plaintiff. It might very well be that the activities of Penn Controls, Inc., carried on in this State through its salesmen, were sufficiently regular, systematic, and continuous, and of sufficient volume, to justify the court in exercising jurisdiction under the provisions of G.S. § 55–145, if the plaintiff were a resident of this State. We need not belabor this point, however, or discuss the authorities construing this section of the statutes, since the plaintiff is neither a resident of nor has the usual place of business in this State.

We turn now to the principal decisions of the North Carolina Supreme Court dealing with G.S. § 55–144. In Radio Station, WMFR, Inc., v. Eitel-McCullough, Inc., 232 N.C. 287, 59 S.E.2d 779 (1950), the defendant, a California corporation engaged in the manufacture for sale in wholesale lots of filament tubes for use in radio transmitting equipment, employed six dealer representatives in various cities in North Carolina as exclusive outlets for the sale of its tubes in this State. The tubes of the defendant were guaranteed for one year from date of purchase, or one thousand hours of filament light. The defendant engaged in a continuous solicitation of orders through its local dealer representatives, and also employed a sales representative to travel in the State to aid in the promotion of sales, and a representative to investigate complaints by customers regarding inferior tubes. The defendant also employed agents to facilitate the collection of delinquent or slow accounts owed by dealer representatives in this State, through personal contacts. Service of summons was made upon the Secretary of State under G.S. § 55–38, now G.S. § 55–144. The trial court sustained jurisdiction. The North Carolina Supreme Court reversed, holding that the

various activities of the defendant were insufficient "to bring it within the pale of the statute which makes 'doing business' in this state essential to its application." Clearly, the activities of Penn Controls, Inc., in this State were far less extensive than the activities of the defendant in the Radio Station case.

In Lambert v. Schell, 235 N.C. 21, 69 S.E.2d 11 (1952), the defendant railroad, a foreign corporation, maintained a freight and passenger agent in this State. The duties of the agent were to cultivate good will among manufacturer's representatives on behalf of the railroad, with the view and purpose of routing shipments of freight from such manufacturers over the lines of the railroad, to solicit business, adjust grievances, and generally to conduct the business of the railroad in this State. The trial court sustained jurisdiction, both on the basis that the defendant railroad was transacting business in this State and that the agent was the person upon whom process should be served. The North Carolina Supreme Court reversed, holding that the defendant railroad had not been shown to be "* * * doing business or maintaining a local agent within this State so as to render it amenable to process * * *." It cannot be doubted that the activities of the agent in the Lambert case in cultivating good will, soliciting business, adjusting grievances, and generally carrying on the business of the railroad in this State, were more extensive than the salesmen employed by Penn Controls, Inc., to call on wholesalers and manufacturers in this State.

In Harrington v. Croft Steel Products, 244 N.C. 675, 94 S.E.2d 803 (1956), the defendant, a New York corporation, habitually shipped its goods into North Carolina in its own trucks, which goods were delivered to its customers by its own agents and employees in charge of the trucks. These employees also delivered to the defendant's customers bills of lading covering the shipments, and accepted receipts for same and delivered them to the defendant. Over a period of seventeen months the purchase price of goods sold and delivered in this State was approximately $650,000.00. The trial court held that service of summons on the Secretary of State was valid and that the court acquired jurisdiction over the defendant. The North Carolina Supreme Court affirmed, pointing out that the defendant transported its manufactured goods to this State in its own trucks, thus completing the transaction by making deliveries here. It was further held that such deliveries constituted an essential part of the business of the defendant. The court, however, reaffirmed its earlier decisions that "the taking of orders in this State to be transmitted to the home office of a foreign corporation for acceptance and the shipment by common carrier of its goods into this State is not doing business" in this State. Again, there is no suggestion that Penn Controls, Inc., ever shipped any goods into this State except by common carrier. The factual distinction is obvious.

In Dumas v. Chesapeake and Ohio Railway Company, 253 N.C. 501, 117 S.E. 2d 426 (1960), jurisdiction was sustained under G.S. § 55–144. However, the solicitation of business by the defendant's agent was substantially aided by other manifestations of corporate presence. It was pointed out that the facts were far from identical with the facts in Lambert v. Schell, 235 N.C. 21, 69 S.E. 2d 11 (1952). In this connection, the court stated, 117 S.E.2d at page 429:

"* * * In the instant case we have more than the mere solicitation of freight and passenger traffic by defendant's agent Trent. For instance, when he has a request for passenger traffic, he phones the company's passenger department in Richmond, Virginia, and tells them what is desired in the way of accommodations and train schedules, and asks them to leave these things with a ticket agent of the company where the passenger will board one of defendant's trains. In other words, Trent in North Carolina con-

**14**

summates the request or the successful solicitation of passenger traffic. Further, if he is successful in the solicitation of freight traffic, and the Southern Railway Company carries the goods to Lynchburg, Virginia, and the defendant company carries the goods to their destination, the bill of lading is signed by Southern Railway Company in North Carolina, and the through rate is based on the published rate and applicable tariffs at that time, and the defendant company in North Carolina publishes through rates with North Carolina carriers. Such activities are a regular, continuous and sustained course of business by Trent in North Carolina for defendant company, so that in Trent's territory the defendant company, in his words, 'would handle a total tonnage of 1400 cars a month.'"

Under these circumstances, the defendant was held to be transacting business in this State, through agents in this State, so as to give the state court jurisdiction over the defendant for the cause of action alleged. It should be emphasized, however, that the Dumas case does not depart from the legal principles enunciated in the earlier cases, or from the plain wording of G.S. § 55–131, to the effect that mere soliciting or procuring orders through employees or agents, where such orders require acceptance without this State before becoming binding contracts, does not constitute "transacting business" in this State.

The plaintiff places great reliance upon Westcott-Alexander, Incorporated v. Dailey, 4 Cir., 264 F.2d 853 (1959). The court was there concerned with the construction of a Virginia statute dealing with substituted service of process on a foreign corporation. The defendant's agent was engaged in substantial engineering activities, both personally and through his company, in addition to his sales activities. He was authorized to make firm bids on established terms, but was required to consult the home office before making a special price on large orders. The litigation grew out of a contract made by the agent on behalf of defendant, which was to be performed by the defendant in the State of Virginia. Moreover, the plaintiff was a resident of Virginia. Under the facts in the Westcott case, there is little doubt but that the validity of service of summons would be sustained in North Carolina, particularly in an action brought by a resident plaintiff.

In Worley's Beverages, Inc. v. Bubble Up Corp., 167 F.Supp. 498 (E.D.N.C., 1958), this court had the opportunity to discuss in some detail most of the North Carolina authorities relating to substituted service on foreign corporations, and questions involving due process. There it was held that service was valid under G.S. § 55–144 and G.S. § 55–145. However, the conclusions reached in that case do not warrant, on the basis of the facts here presented, subjecting the defendant, Penn Controls, Inc., to a judgment *in personam*.

For the reasons stated, it is concluded that the service of process in this case was invalid, and that the motion of the defendant, Penn Controls, Inc., to dismiss the action as to it, should be allowed.