SNELLING & SNELLING, INC. v. JOY W. WATSON, Individually, SNELLING & SNELLING OF HIGH POINT, INC., PARTIME TESTED TEMPORARIES, INC., JOBS ONE OF WINSTON-SALEM INC., SNELLING & SNELLING OF THOMASVILLE, INC. and ERIC BOYD SCHEIPERS

No. 7818SC496

(Filed 15 May 1979)

Actions § 2; Corporations §§ 2, 26— foreign corporation — franchise agreements — interstate commerce — no certificate of authority — right to bring action in this State

Plaintiff foreign corporation, a national franchisor of employment agencies, was transacting business in interstate commerce within the meaning of G.S. 55-131(b)(8) and was not required to obtain a certificate of authority from the Secretary of State as a prerequisite to bringing suit in this State where its activities in this State consisted of (1) soliciting franchise agreements and promoting sales of its business forms; (2) training and instructing its franchisees and inspecting the premises, books and records of its franchisees; and (3) controlling the business methods of its franchisees to protect its service mark and to ensure an accurate accounting of profits by its franchisees, since plaintiff's activities were incidental to its interstate franchise contracts and were, therefore, interstate in nature.

APPEAL by plaintiff from *Crissman, Judge.* Judgment entered 3 April 1978 in Superior Court, GUILFORD County. Heard in the Court of Appeals 5 March 1979.

Plaintiff is a nationwide franchisor of employment agencies and is incorporated in the Commonwealth of Pennsylvania with its principal place of business in Sarasota, Florida. Between 1964 and 1974, plaintiff entered into licensing agreements with each of the four corporate defendants. The defendant, Joy W. Watson, executed the contracts on behalf of the corporate licensees.

On 9 August 1977, plaintiff brought this action for breach of the four franchising agreements. Plaintiff sought to recover money damages, injunctive relief under the non-competition provisions in the licensing agreements, damages for infringement of service marks, treble damages and injunctive relief for trademark violations, and an accounting by the four licensees.

On 16 September 1977, defendants moved to dismiss the complaint pursuant to G.S. 1A-1, Rule 12(b) on the grounds that plaintiff is a foreign corporation transacting business within North Carolina but has failed to obtain a Certificate of Authority from

the Secretary of State, and is therefore prohibited by G.S. 55-154(a), from maintaining an action in this State.

In support of defendants' motion to dismiss, the defendants presented the affidavit of Joy W. Watson. The affidavit tended to show that since 1964, the plaintiff has sent various employees into this State for periodic inspections of the premises of each licensee. The plaintiff's employees inspected the licensee's files, reports, business forms, cards and financial records. Plaintiff's employees also made periodic visits to the premises of the licensees in this State to solicit the purchase of business forms, advertising and promotional materials. In addition, the plaintiff sent its employees to instruct the licensees in the procedures and systems they were to use. Other visits were made to negotiate and enter into licensing agreements and to attend meetings and conferences. Defendant licensees paid over $10,000 a year to the plaintiff in license fees.

Plaintiff presented the affidavit of John J. McBrearty, Vice President of Snelling and Snelling, Inc., which tended to show that the plaintiff maintained no offices in North Carolina and that no officers or employees of the plaintiff corporation reside in this State. The corporation takes no part in the daily operations of the local franchisees. Plaintiff does employ sixteen Directors of Franchise Relations to provide advice and services to its franchisees. Plaintiff has a total of fifteen franchisees in North Carolina.

On 3 April 1978, a Judgment was entered dismissing the complaint on the stated grounds that the provisions of G.S. 55-154(a) prohibited plaintiff from maintaining this action because it had failed to obtain a Certificate of Authority from the Secretary of State of North Carolina. From this judgment, plaintiff appeals.

*Smith, Moore, Smith, Schell & Hunter by Michael R. Abel and Suzanne Reynolds; McNairy, Clifford & Clendenin by Harry H. Clendenin III for plaintiff appellant.*

*Whiting, Horton & Hendrick by P. B. Whiting for defendant appellees.*

CLARK, Judge.

Plaintiff assigns as error the court's dismissal of the complaint pursuant to G.S. 55-154(a), for failure to obtain a Certificate

of Authority as required by G.S. 55-131. Plaintiff contends that it was not transacting business in North Carolina within the meaning of G.S. 55-131(a) since its business activities were solely interstate in nature. Therefore, plaintiff was not required to procure a Certificate of Authority and it was error to deny plaintiff access to the courts of North Carolina. In addition, plaintiff contends that if the statutory provisions of G.S. 55-131 and G.S. 55-154 are applicable to the plaintiff, then the statutes place an unreasonable burden on interstate commerce in violation of the commerce clause of the Constitution of the United States. U.S. Const., art. I, § 8, cl. 3.

G.S. 55-131 provides in pertinent part as follows:

"(a) A foreign corporation shall procure a certificate of authority from the Secretary of State before it shall transact business in this State. . . .

(b) [A] foreign corporation shall not be considered to be transacting business in this State, for the purpose of this Chapter, by reason of carrying on in this State any one or more of the following activities:

\*    \*    \*    \*

(8) Transacting business in interstate commerce."

The initial inquiry, then, is whether the plaintiff was transacting business within this State as defined by G.S. 55-131. The statutory provisions clearly provide that the State may not require a foreign corporation to obtain a Certificate of Authority by reason of its tranacting *interstate business.*

Defendant contends that several North Carolina cases have held that activity similar to plaintiff's constituted "transacting business" within North Carolina pursuant to G.S. 55-144 and are controlling in this case. G.S. 55-144 provides that:

"*Suits against foreign corporations transacting business in the State without authorization.*—Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon

whom any process, notice or demand in any suit upon a cause of action arising out of such business may be served."

In *Dumas v. Chesapeake and Ohio Ry.*, 253 N.C. 501, 117 S.E. 2d 426 (1960), the North Carolina Supreme Court held that the definition of "transacting business" as set forth in G.S. 55-131 was applicable to G.S. 55-144. In *Dumas*, the defendant was a foreign corporation which had sent agents into this State to procure orders for freight and passenger traffic. The agent, in addition to processing orders, telephoned the defendant's passenger department in Virginia and ordered tickets. The bills of lading for freight traffic were signed in North Carolina. The court held that G.S. 55-131(b)(5), which provides that soliciting orders which are accepted outside of this State does not constitute transacting business in North Carolina, was applicable to G.S. 55-144. The court found, however, that defendant corporation engaged in more activity in this State than the mere solicitation of orders and therefore was not exempted from procuring a Certificate of Authority and was amenable to service of process pursuant to G.S. 55-144.

In *Schnur and Cohan, Inc. v. McDonald*, 220 F. Supp. 9 (M.D.N.C. 1963), *appeal dismissed*, 328 F. 2d 103 (4th Cir. (1964)), the court held that service of process on the defendant foreign corporation pursuant to G.S. 55-144 was invalid because, according to G.S. 55-131(b)(5), defendant was not transacting business within North Carolina merely by soliciting orders in North Carolina. *See Crabtree v. Coats & Burchard Co.*, 7 N.C. App. 624, 173 S.E. 2d 473 (1970).

The definition of "transacting business" set forth in G.S. 55-131 is, therefore, applicable to G.S. 55-144, and any cases determined under the latter statute are relevant in considering the applicability of G.S. 55-131.

There are two cases decided pursuant to G.S. 55-144, which are cited by the defendant in support of his contention that the plaintiff was transacting business within this State. In *Abney Mills v. Tri-State Motor Co.*, 265 N.C. 61, 143 S.E. 2d 235 (1965), the defendant was a foreign corporation which purchased a controlling interest in a domestic corporation. The defendant sent officers and agents to North Carolina to control and manage the internal affairs of a domestic corporation. Thereafter, plaintiff

brought suit in North Carolina, issuing a summons for service on defendant pursuant to G.S. 55-144. The court noted that, although mere ownership of a domestic corporation does not constitute doing business in this State, the activity of a foreign corporation in controlling the internal affairs of a domestic corporation would constitute transacting business in this State, within the meaning of G.S. 55-144. The court remanded for further findings of fact.

In *Throwing Corp. v. Deering Millikin Research Corp.*, 302 F. Supp. 487 (M.D.N.C. 1969), the defendant was a foreign corporation which had granted licenses for its yarn manufacturing process to 23 North Carolina residents. Defendant sent auditors into North Carolina to inspect the records and books of the local licensees. The defendant had also received royalties from its local licensees. The court held that the defendant was "transacting business" within this State pursuant to G.S. 55-144 as well as G.S. 55-145 (a)(1) and upheld the exercise of *in personam* jurisdiction over the defendant. Neither of these cases, however, considered whether the activity of the foreign corporation was "transacting business in interstate commerce" and was therefore excluded from the requirement of obtaining a Certificate of Authority pursuant to G.S. 55-131(b)(8). These cases, therefore, are not controlling on the issue of whether the plaintiff's activity constituted "interstate commerce" within the meaning of G.S. 55-131(b)(8).

We must, therefore, determine whether the activities of Snelling & Snelling, Inc. within the State of North Carolina constituted "transacting business in interstate commerce," or were intrastate activities which subjected the plaintiff to the requirements of G.S. 55-131(a). The activities of Snelling & Snelling fall into the following general categories: (1) soliciting franchise agreements and promoting the sales of its business forms, (2) the training and instruction of franchisees and the inspection of the licensees' books and records, and (3) the control exercised by Snelling & Snelling over the business methods of its licensees. We will consider each of these activities separately, since if any one of these is deemed to be *intrastate* activity, the statutory exemption would not apply and plaintiff would be required to obtain a Certificate of Authority.

We note at the outset that "all interstate commerce is not sales of goods. Importation into one state from another is the in-

dispensable element, the test, of interstate commerce; and every negotiation, contract, trade and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons or information, is a transaction of interstate commerce." *Butler Brothers Shoe Co. v. United States Rubber Co.*, 156 F. 1, 17 (8th Cir. 1907), *cert. denied*, 212 U.S. 577, 53 L.Ed. 658, 29 S.Ct. 86 (1908); *International Textbook Co. v. Pigg*, 217 U.S. 91, 54 L.Ed. 678, 30 S.Ct. 481 (1909). Therefore, the sale of services can constitute *interstate* commerce.

The plaintiff's activity included the solicitation of licensing agreements with North Carolina residents and the solicitation of sales of its products such as business forms. In the landmark decision of *Eli Lilly & Co. v. Sav-on-Drugs, Inc.*, 366 U.S. 276, 6 L.Ed. 2d 288, 81 S.Ct. 1316, *reh. denied*, 366 U.S. 978, 6 L.Ed. 2d 1268, 81 S.Ct. 1913 (1961), the Supreme Court considered what type of business solicitation would constitute intrastate business. In *Eli Lilly*, the plaintiff, a foreign corporation, contracted with New Jersey wholesalers for the distribution of plaintiff's products. Plaintiff maintained an office in New Jersey, was listed in the telephone directory and maintained a staff of 18 salesmen in New Jersey. The salesmen visited retailers to encourage sales between New Jersey wholesalers and retailers, and often placed orders with wholesalers on behalf of the retailers. The Supreme Court held that the plaintiff was engaged in intrastate commerce and could be required to procure a Certificate of Authority. The holding was based upon the fact that plaintiff's salesmen were promoting dealings *between* the wholesalers and retailers who were all residents of New Jersey. *See Robbins v. Shelby County*, 120 U.S. 489, 30 L.Ed. 694, 7 S.Ct. 592 (1887); *Champion Spark Plug Co. v. T. G. Stores, Inc.*, 356 F. 2d 462 (4th Cir. 1966); and *Materials Research Corp. v. Metron, Inc.*, 64 N.J. 74, 312 A. 2d 147 (1973).

In the case *sub judice*, the plaintiff maintained no offices in this State and its salesmen solicited sales between plaintiff, a foreign corporation, and North Carolina residents. There is no evidence that plaintiff engaged in or promoted any dealings between North Carolina residents and its North Carolina franchisees. The plaintiff's solicitation of business, therefore, was interstate in nature and plaintiff cannot be required to procure a Certificate of Authority by reason of this activity.

Next, defendant contends that plaintiff sent agents into this State to train its franchisees and to inspect the premises, books and records of its licensees, and therefore was engaged in intrastate commerce.

In *Allenburg Cotton Co. v. Pittman*, 419 U.S. 20, 42 L.Ed. 2d 195, 95 S.Ct. 260 (1974), the plaintiff, a Tennessee corporation, contracted to purchase cotton from a Mississippi farmer. The plaintiff stored its cotton in a Mississippi warehouse for sorting and classifying. The plaintiff brought suit for breach of contract against the farmer in Mississippi and the farmer moved to dismiss the complaint because plaintiff was transacting business in intrastate commerce without having obtained a Certificate of Authority. The Supreme Court held that the storing of cotton in Mississippi was only an incidental part of an interstate contract, and that plaintiff could not be required to obtain a Certificate of Authority.

In *York Manufacturing Co. v. Colley*, 247 U.S. 21, 62 L.Ed. 963, 38 S.Ct. 430 (1918), the plaintiff, a foreign corporation, sold an ice plant to a Pennsylvania corporation. The plaintiff agreed to furnish an engineer to assemble and erect machinery in the forum state. The Supreme Court held that in order to determine whether the corporation's activity in the state was interstate or intrastate the court must consider the nature and character of the business. The court stated that a corporation's activity, although apparently intrastate in nature, is interstate "where the service to be done in a state as the result of an interstate commerce sale was essentially connected with the subject-matter of the sale; that is, might be made to appropriately inhere in the duty of performance. . . . [T]he right to make an interstate commerce contract includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made." 247 U.S. at 24-25, 62 L.Ed. at 965. The court held that the engineers' duties were incidental to the interstate contract and therefore the state had no authority to require the plaintiff to obtain a Certificate of Authority. *See also In re Delta Molded Products, Inc.*, 416 F. Supp. 938, (N.D. Ala. 1976), *aff'd sub nom. Sterne v. Improved Machinery, Inc.*, 571 F. 2d 957 (5th Cir. 1978).

A franchise "arises where a national franchisor of a national brand or service subcontracts to permit a local dealer or person,

to use his brand and agrees to provide advertising and other materials, services and equipment." 62 Am. Jur. 2d *Private Franchise* § 3 at 761 (1972). The franchisor is obligated by the agreement to provide advertising, training and other services. "It is of vital importance . . . that [the franchisee] be properly and effectively trained by the franchisor in the rudiments of operations required by the type of service. . . ." 62 Am. Jur. 2d *Private Franchise* § 6 at 765. If the franchisor fails to train or to supervise the franchisee, the franchisor is in breach of contract. *See Runyan v. Pacific Air Industries, Inc.*, 2 Cal. 3d 304, 85 Cal. Rptr. 138, 466 P. 2d 682 (1970); *Aberle v. North Dakota B & B Permanent & Temporary Personnel Systems, Inc.*, 186 N.W. 2d 446 (N.D. 1971).

In *First Investment Company v. McLeod*, 363 So. 2d 774 (Ala. 1978), the Great Lakes Nursery Corporation entered into a Christmas tree franchising agreement with defendant McLeod. Two salesmen for Great Lakes went to Alabama to sell the franchise. The agreement provided that McLeod would purchase 30,000 seedlings from Great Lakes, and Great Lakes would provide services, such as technical training for planting and marketing the trees. Great Lakes was also required to advertise and promote the sale of defendant's Christmas trees. McLeod also went with agents of Great Lakes to promote the sale of franchises to Alabama residents. McLeod gave a note to Great Lakes for $8,000 which was negotiated to plaintiff, First Investment Company. Plaintiff brought suit on the promissory note in Alabama, and defendant moved to dismiss the complaint for failure of Great Lakes to qualify to do business in violation of the Constitution of Alabama, Art. XXI, § 232 and Code of Alabama § 10-2-254. The plaintiff contended that these provisions were inapplicable because Great Lakes' activity was solely interstate in nature, and that *Kentucky Galvanizing Co. v. Continental Casualty Co.*, 335 So. 2d 649 (Ala. 1976), held that the provisions of Ala. Code § 10-2-254 are not applicable to foreign corporations engaged only in "interstate commerce." The court noted that "the requirements to furnish expert help, equipment and advice were merely incidental attributes of the main undertaking of Great Lakes . . . ." 363 So. 2d at 777, and held that Great Lakes was engaged in interstate commerce and was therefore not required to obtain a Certificate of Authority to do business in Alabama. *See Sausman Diversified Investments, Inc. v. The Cobbs Co.*, 208 So. 2d 873 (Fla. App. 1968); *In re Delta Molded Products, Inc., supra.*

The four licensing agreements in the case *sub judice*, provide in pertinent part:

"2. (a) SNELLING shall, within a reasonable time following the execution of this agreement, provide to Licensee and/or Licensee's employer instruction, advice and guidance as in SNELLING'S judgment shall be appropriate with respect to the establishment of Licensee's business, and with respect to the methods and techniques developed by SNELLING for the operation of such business, such services to be provided by SNELLING without charge to Licensee at a place and time designated by SNELLING. The instruction, advice and guidance to be rendered by SNELLING as aforesaid shall include the following subjects: interviewing of clients; evaluation of clients; preparation of job orders; telephone usage; preparation of advertising; record keeping; usage of forms; selection of office location; office layout and furnishing; selection of office personnel; office operations. All expenses of Licensee incident to attendance at instruction sessions shall be borne by Licensee. SNELLING shall also supply to Licensee, for the exclusive use of Licensee and its employees, copies of SNELLING training manuals; and Licensee shall treat the contents of said manuals as confidential and shall not disclose the contents thereof to unauthorized persons.

(b) In the event that Licensee shall request instruction in addition to that to be provided by SNELLING under paragraph 2(a), SNELLING shall provide such instruction to Licensee or its employees at Licensee's place of business at a mutually convenient time; provided, however, that the cost of such additional instruction, including transportation, subsistence and a reasonable charge for the time and services of SNELLING'S representative, shall be borne by Licensee and, if requested by SNELLING, shall be paid in advance.

(c) Licensee shall provide to each person employed in the operation of Licensee's business a minimum of three days' training and instruction in the methods and techniques developed by SNELLING. Such training and instruction shall be based upon and in accordance with the SNELLING training manuals, and shall be provided prior to participation by such employee in Licensee's business. As an alternative to the

foregoing instruction Licensee may request SNELLING to render training instruction to Licensee's employees in accordance with the provisions of paragraph 2(b) either at Licensee's place of business or at such other place as SNELLING shall designate for such training."

The activity of plaintiff in training and supervising the defendant licensees, under the test set forth above, is an integral part of the interstate franchise agreement and is therefore also interstate in nature.

Defendants also contend that the facts establish an agency relationship or joint venture between plaintiff and defendants, and therefore the acts of the agent are attributed to the principal for qualification purposes. *See Scott Co. v. Enco Construction Co.*, 264 So. 2d 409 (Miss. 1972); Annot., 18 A.L.R. 2d 187 (1951). However, in *T. E. McCutcheon Enterprises, Inc. v. Snelling and Snelling, Inc.*, 232 Ga. 609, 212 S.E. 2d 319 (1974), on facts almost identical to the case at hand, the court held that the licensees were not agents of the franchisor but were independent contractors. There was no evidence presented in the case *sub judice* that the licensees were acting on behalf of the plaintiff or were acting in any capacity other than as independent contractors. Therefore, the activities of the licensees within this State cannot be attributed to the plaintiff.

Finally, defendants contend that the plaintiff exerted so much control over the defendant licensees that plaintiff was engaged in intrastate commerce. The record does indicate that the plaintiff exercised a great deal of control over the licensees. The licensing agreement required the licensee to: use only the Snelling and Snelling name, adhere to specific procedures and methods outlined by plaintiff, maintain accurate records and to provide reports and copies of invoices.

All of these controls, however, are designed to ensure that the licensees are not abusing the service mark, to ensure that the quality of service among licensees is uniform and to ensure that the licensees are properly accounting for their profits.

In exchange for the right to use a service mark, a franchisor "retains the right to control the manner in which the franchisee conducts his business. Indeed, such control is essential to the

validity of the franchisor's trademark since trademarks function in part to guarantee the consistent quality of the product identified by the mark." D. Chisum, State Regulation of Franchising: The Washington Experience, 48 Wash. L. Rev. 291, 295 (1973). "The quality of the services must be controlled or all rights in the mark will be lost." T. Arnold, B. Durkee, Trademark and Unfair Competition Considerations in Franchised Business Operations, 15 N.Y.L. Forum 80, 89 (1969).

In *State v. Ford Motor Co.*, 208 S.C. 379, 38 S.E. 2d 242 (1946), the State of South Carolina sought to recover license fees and penalties from the defendant foreign corporation, because it had failed to file or obtain a license to do business in South Carolina. The defendant had contracted with eighty Ford dealers in South Carolina and had five Ford distributorship agreements with South Carolina dealers. The dealers were required to make 10-day reports on their activities and sales prospects. Agents of the defendant traveled to South Carolina and regularly visited dealers to advise them of sales and service methods. The dealers were required to sell parts at specified prices. The court held that the Ford Motor Companies' activities were interstate in nature and that the defendant's activities in sending representatives into South Carolina, servicing warranties, and supervising the dealers constituted interstate commerce. In *Carolina Components Corp. v. Brown Wholesale Co.*, --- S.C. ---, 250 S.E. 2d 332 (1978), the plaintiff was a North Carolina corporation which sent salesmen into South Carolina to solicit sales resulting in over 100 separate shipments. The court noted that "where a foreign corporation's contacts involve only soliciting, cultivating and supervising its interstate business, such corporation is not subject to domestication requirements." 250 S.E. 2d at 334.

The controls exercised by plaintiff over the four licensees, although numerous, are all directly related to the protection of plaintiff's rights in its service mark and to ensure accurate accounting by the licensees. There is no evidence that the plaintiff's agents actually operated the day-to-day business of the licensees. In *Filmaker's Releasing Organization v. Realart Pictures, Inc.*, 374 S.W. 2d 535 (Mo. App. 1964), the plaintiff, a foreign corporation, entered into a franchising agreement with the defendant for the distribution of plaintiff's films. The contract provided that the defendant was to inform plaintiff of the whereabouts of the films,

that defendant could not change his personnel and that defendant must display plaintiff's name. The court held that the plaintiff was engaged in interstate business and need not qualify to do business within the State prior to bringing suit, noting that the plaintiff had no control over the employees' wages or hours of the defendant franchisee. *See* Abney Mills, *supra.*

The licensing agreements between plaintiff and the four defendant licensees were interstate contracts and plaintiff's activity, pursuant to the terms of those agreements, was incidental to the interstate contract and was, therefore, interstate in nature. Plaintiff was, therefore, transacting business in interstate commerce within the meaning of G.S. 55-131(b)(8) and is not required to obtain a Certificate of Authority from the Secretary of State as a prerequisite to bringing suit in this State.

The judgment is

Reversed and remanded.

Chief Judge MORRIS and Judge ARNOLD concur.