METRIC CONSTRUCTION, INC.,
Plaintiff and Appellant,

v.

GREAT PLAINS PROPERTIES, a limited partnership, and Harlan Heinsohn and Richard D. Olson, its partners, Defendants,

and

Great Western Development Corporation, Defendant and Appellee.

Civ. No. 10532.

Supreme Court of North Dakota.

Feb. 27, 1984.

Tschider & Smith, Bismarck, for plaintiff and appellant; argued by Sean O. Smith, Bismarck.

Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for defendant and appellee; argued by Thomas D. Kelsch, Mandan.

PEDERSON, Justice.

█ Metric Construction, the creditor in this contract action, appeals from a judgment entered in its favor. The trial court determined as a matter of law that the contract in question was governed by §§ 13–01–14 and 13–01–15, NDCC (collection of late payment charges), but disallowed any late payment charge because of Metric's failure to comply with subsection 6 of § 13–01–15. Instead, the court awarded interest at the legal rate of 6%, presumably pursuant to § 47–14–05, NDCC. We conclude that §§ 13–01–14 and 13–01–15 do not apply to a written contract that specifically provides for a finance charge on past due accounts and, accordingly, we reverse that part of the judgment which assessed interest and remand for amendment of the judgment to include the finance charge agreed upon in the contract.

The material facts involved are not disputed and are not themselves unduly confusing or complex. The parties have, however, taken rather unusual positions in applying their legal arguments to the facts, making it difficult to sort out the real issues and contentions on appeal.

Metric Construction (Metric) agreed to erect a basement and foundation walls for Great Western on property owned by Great Plains. The first page of the written agreement contained the provision "all in-

voices due 10th day of month following billing and in no case are to run over 30 days." The second page included the rubber-stamped statement that "A FINANCE CHARGE of 1½% per month 18% Annually will be charged on all PAST DUE ACCOUNTS." All parties treated this statement as a part of the contract.

The total price for Metric's work was $46,032.00, which was billed to Great Western on February 4, 1982. Great Western paid $5,000.00 on June 4, 1982, leaving an unpaid principal balance of $41,032.00. Metric started sending Great Western monthly bills in March 1982 and compounded the 1½% finance charge for each billing. When Great Western did not make the required payments, Metric filed a mechanic's lien and, pursuant to North Dakota law, brought an action to foreclose on the lien.

The case was tried to the court, which awarded Metric a judgment foreclosing its mechanic's lien and authorizing a sheriff's sale to satisfy the amount due and owing Metric. The trial court did not find or conclude that the contract terms were ambiguous and the parties did not suggest that there was any ambiguity in the contract. The court, in its Finding of Fact V, stated that Metric did not intend to extend credit beyond 30 days and that late payment by Great Western was not anticipa-

ted. This finding was apparently based on the testimony of Metric's president. The trial court then concluded, as a matter of law, that §§ 13–01–14 and 13–01–15[1] apply to all situations where an extension of credit is not intended, that Metric's claim was such a situation, that Metric was not covered by the exclusions set forth in § 13–01–14, and that the requirements of § 13–01–15 were mandatory. Because Metric had failed to comply with subsection 6 of § 13–01–15, the court denied Metric's claim that it was entitled to collect a "late payment charge" of 18%. The trial court's Conclusions of Law VI and VII state:

> "That though Metric is not entitled to charge a late payment charge under § 13–01–14, it is entitled to interest at the legal rate of 6% on the outstanding contract balance commencing with March 4, 1982."

> "That Great Western is therefore indebted to Metric, in the sum of $41,032.00, plus interest from March 4, 1982."

On appeal Metric does not contend that it is entitled to an 18% "late payment charge" under § 13–01–14, but argues that it is entitled to 18% "interest" because the contract provided for an 18% "finance charge" on overdue accounts. Great Western, on the other hand, takes the position that Met-

1. The statutory language that concerns us in this case, before changes made by Ch. 171, S.L.1983, is:

"A creditor may charge, receive, and collect a late payment charge in an amount not to exceed one and one-half percent per month on all money due on account from thirty days after the obligation of the debtor to pay shall have been incurred. The late payment charge provided in this section may be charged only if at the time the obligation was incurred the creditor did not intend to extend any credit beyond thirty days and any late payment of the obligation was unanticipated. The provisions of this section shall not apply to money due on retail installment contracts, as defined in chapter 51–13; money due on revolving charge accounts, as defined in chapter 51–14; and money due on medical, hospital, and residential utility bills." Section 13–01–14, NDCC.

"A creditor may charge the late payment charge provided for in section 13–01–14 only

if he promptly supplies the debtor with a statement as of the end of each monthly period, or other regular period agreed upon by the creditor and the debtor, in which there is any unpaid balance. Such statement shall recite the following:
1. The percentage amount of the late payment charge which will be charged beginning thirty days after the obligation is incurred.
2. The unpaid balance at the end of the period.
3. An identification of any amount debited to the debtor's account during the period.
4. The payments made by the debtor to the creditor during the period.
5. The amount of the late payment charge.
6. A legend to the effect that the debtor may at any time pay the total unpaid balance. The items need not be stated in the sequence or order set forth above. Additional items may be included to explain the computations made in determining the amount to be paid by the debtor."

ric is only entitled to the "late payment charge" under § 13–01–14 and that it lost that entitlement by failing to comply with all the requirements imposed by § 13–01–15. Although Great Western did not raise an ambiguity issue in the trial court, it is significant that on appeal Great Western asserts that the contract provisions for an 18% "finance charge" on overdue accounts is nullified by the contradictory contract provision that the due date is, in no case, to run over 30 days following billing. The real problem involves one of semantics and the ambiguity which inheres in the terms "late payment charge," "finance charge," and "interest" as used in the pertinent statutes, the contract and the briefs.

■ The rules applicable to contract interpretation are set out in Chapter 9–07, NDCC. Under § 9–07–02, when the language is clear and does not involve an absurdity, that language governs the interpretation. The intention of the parties is to be ascertained from the writing alone, if possible. *Ray Co., Inc. v. Johnson*, 325 N.W.2d 250, 252 (N.D.1982). Neither party contended in the trial court that the written agreement was ambiguous.

■ Even assuming that the testimony given by Metric's president at trial supports a conclusion that the contract language is ambiguous (despite the fact that ambiguity was not specifically mentioned by the parties or the court) and that the door was thus opened to allow parol evidence, the testimony is no less ambiguous than the contract terms themselves. Testimony which tends to add to, or vary, the terms of a written contract (instead of explaining or clarifying any ambiguity) is ordinarily inadmissible and, even though admitted, should not be considered for that purpose. See *Sorlie v. Ness*, 323 N.W.2d 841, 848 (N.D.1982). Considering the language of the contract as a whole, and giving effect to any apparent conflicting terms (§§ 9–07–06 and 9–07–07, NDCC), we conclude, as a matter of law, that Metric and Great Western agreed that a finance charge at the annual rate of 18% would be made on the subject account when it remained unpaid for more than 30 days after billing.

■ This court is not bound by labels imposed by trial courts. *Midland Diesel Service & Engine v. Sivertson*, 307 N.W.2d 555, 557 (N.D.1981). The determinations made by Findings of Fact III and V are clearly conclusions of law [2] and are fully reviewable on appeal under Rule 52(a), NDRCivP. Because the contract included a provision requiring added compensation for delayed payment, it cannot be said that "late payment was unanticipated," and the trial court erred, as a matter of law, when it so held. A specific provision, as in this case, for collection of a "finance charge" satisfies the provisions in § 47–14–05, NDCC,[3] and is, in effect, interest "contract-

**2.** Trial court Finding of Fact III recites, in part, that it is undisputed that the contract provides that:

(1) "... all invoices due 10th day of month following billing and in no case are to run over 30 days."

(2) "A finance charge of 1½% per month 18% annually will be charged on all past-due accounts."

Trial court Finding of Fact V states:

"That at the time the contract between Metric and Great Western was entered into, Metric did not intend to extend credit beyond 30 days, and late payment by Great Western of the contract price was not anticipated."

Where the evidence allows but one conclusion, questions of fact become questions of law.

See *Johnson v. Production Credit Association,* — N.W.2d ——— (N.D.1984), Civil # 10,480.

**3.** Section 47–14–05, NDCC provides that:

"Interest for any legal indebtedness shall be at the rate of six percent per annum unless a different rate not to exceed the rate specified in section 47–14–09 is contracted for in writing. All contracts shall bear the same rate of interest after maturity as they bear before maturity, and any contract attempting to make the rate of interest higher after maturity shall be void as to such increase of interest."

Section 47–14–09 is the usury statute. The parties agree that the 18% "finance charge" in this case does not violate the usury statute. Usury is determined pursuant to a formula that requires factual information not in the record.

ed for in writing" even though the label "interest" was not used.[4]

 Because we believe the language in § 13–01–14 is ambiguous as applied to the circumstances of this case, we have considered the legislative history supplied by Metric. See § 1–02–39(3); *Apple Creek Tp. v. City of Bismarck*, 271 N.W.2d 583, 586 (N.D.1978); *Rausch v. Nelson*, 134 N.W.2d 519, 523 (N.D.1965); *Sorlien v. North Dakota Workmen's Comp. Bureau*, 84 N.W.2d 575, 578 (N.D.1957); 82 CJS Statutes §§ 355–356; 73 Am.Jur.2d Statutes §§ 173–177. The legislative history provides little insight. It mostly consists of sponsor testimony or citizen testimony preserved in the form of sparse committee notes. In *Snyder's Drug St., Inc. v. North Dakota St. Bd. of Ph.*, 219 N.W.2d 140, 147 (N.D.1974), we noted that because of the ordinary lack of verbatim records, courts are hesitant to rely upon testimony of sponsoring legislators, or others, reportedly given at committee hearings. We are satisfied, however, that § 13–01–14 does not apply, and was not intended to apply to transactions where the obligation was cre-ated by a contract which includes a provision for payment of "interest" or "finance charges," or which contains any other language imposing an obligation to pay added compensation unless payment is made by a specified time. The trial court erred, as a matter of law, when it held that §§ 13–01–14 and 13–01–15 governed the contract in this case.

Judgment reversed in part and case remanded for amendment of the judgment in conformance with this opinion.

ERICKSTAD, C.J., GIERKE and SAND, JJ., and ALLAN SCHMALENBERGER, District Judge, concur.

SCHMALENBERGER, D.J., sitting for VANDE WALLE, J., disqualified.

---

**4.** "Interest" is defined in § 47–14–04, NDCC as "the compensation allowed for the use, or for-bearance, or detention of money, or its equivalent."