Keith Willis LAMBOTT, Plaintiff
and Appellant,

v.

UNITED TRIBES EDUCATIONAL
TECHNICAL CENTER, a North Dakota non-profit corporation, Defendant
and Appellee.

Civ. No. 10712.

Supreme Court of North Dakota.

Jan. 16, 1985.

Kapsner & Kapsner, Bismarck, for plaintiff and appellant; argued by Carol Ronning Kapsner, Bismarck.

Thomas M. Disselhorst, Bismarck, for defendant and appellee.

SAND, Justice.

Keith Willis Lambott appealed a district court judgment which dismissed his action against the United Tribes Educational Technical Center (United Tribes) for breach of his employment contract.

United Tribes is a nonprofit North Dakota corporation providing vocational training for Indian people. In 1981 Lambott signed an employment contract with United Tribes to be a printing instructor during the 1981–1982 academic term. Lambott's contract had a renewal provision which provided:

> "*Time for Renewal of Employee's Contracts:* Any Employee who has been employed by United Tribes pursuant to this contract, shall be notified in writing by the Dean of Education not later than the second day of April in the academic year in which he/she has been employed. Failure to give such notice on or before said date shall constitute an offer to renew the contract for the then current year."

United Tribes is funded primarily by the Bureau of Indian Affairs. In recent years United Tribes' annual BIA funding has been uncertain because of the continued threat of reduced congressional appropria-

tions. As a result of this funding uncertainty, Lambott's contract contained a provision which stated in part:

"... [A]ny ... obligation incurred under this contract is contingent on the existence of Bureau of Indian Affairs funding for United Tribes."

Due to the precarious nature of United Tribes' BIA funding, on 31 March 1982 the Executive Director of United Tribes circulated to all instructors a memo which stated in part:

"In accordance with the terms of your employment contract, we are hereby notifying you of the position the Center must take at this time in regards to contracts for the upcoming year.

"As you are aware, the funding level of the Center is very uncertain for the current Fiscal Year as well as the coming one. Therefore, we are in no position, at this time, to negotiate or offer any contracts for the 1982–83 academic year.

"Be assured, we will notify you as soon as we feel that we can offer contracts for next year. If you have further questions, please contact Ms. Candy Sherman (Ext. 221) at your convenience."

This memo was sent via United Tribes internal mail system. However, Lambott testified he never received a copy of this memo.

United Tribes subsequently determined it would rehire a limited number of instructors for the 1982–83 academic year. On 26 July 1982 United Tribes sent a memo to these individuals with an offer to rehire. However, due to budget constraints, United Tribes could guarantee employment only until 30 September 1982 at which time the instructors would be laid off. United Tribes did not make this offer to Lambott.

Following the end of the 1981–82 academic term, Lambott was hospitalized for an operation in July 1982. During Lambott's absence, United Tribes hired Terry Lewis as a printing operator on a temporary basis.

Prior to his hospitalization Lambott discussed his returning to United Tribes with its Dean of Education. At that time the dean gave no indication to Lambott that his contract had not been renewed for the coming academic term. Following the summer recess, Lambott returned to United Tribes intending to resume his teaching duties for the 1982–83 academic term. On 18 and 19 August Lambott attended staff reorganizational meetings at United Tribes. On 20 August 1982 Lambott received at his home, through the mail, a notice signed by United Tribes' Executive Director and acting Dean of Education which read in part:

"In accordance with United Tribes Educational Technical Center's Administrative Procedures, you are hereby notified that your employment contract, which has expired, shall not be renewed thus terminating your employment as Printing Instructor with U.T.E.T.C. effective August 20, 1982."

Subsequent to Lambott's discharge, United Tribes received its full BIA funding for the 1983 fiscal year. United Tribes continued to employ Terry Lewis as a printing operator and also to teach its printing course. Lewis was hired on a permanent basis in November 1983.

Following his discharge, Lambott brought a breach of contract action against United Tribes. The district court, in its conclusions of law, stated, "it is presumed" Lambott received the 31 March 1982 memo, and concluded United Tribes did not breach the contract and dismissed the complaint.

▆ We have difficulty in determining precisely what presumption the trial court deemed was in operation. A presumption is created only by either legislative enactment or case law. *Woodbury v. Pfluiger*, 309 N.W.2d 104, 108 (N.D.1981). Here, we can locate no legislative or common law presumption which would operate to presume Lambott received the 31 March memo. The presumption contained in Section 31–11–03(24), N.D.C.C., that a letter duly directed and mailed was received in the regular course of the mail, is not applicable because the 31 March memo was not sent via United States mail. Had a finding of fact been made, rather than a conclusion

of law that a presumption existed, that Lambott received the memo, not merely that a memo was disseminated, Rule 52(a), N.D.R.Civ.P., would apply.

■ While we will recognize and consider findings of fact regardless of the label that may be placed upon them, *Matter of Estate of Mehus*, 278 N.W.2d 625, 633 (N.D.1979), in this case any presumption which may have existed was overcome by the testimony of Lambott that he did not receive the letter. However, United Tribes was not necessarily in compliance with the contract even if it was determined as a finding of fact that Lambott received the memo.

The sole issue presented is whether or not United Tribes breached its contractual obligation to Lambott because of the manner in which he was discharged.

According to Lambott's contract, United Tribes' Dean of Education was obligated to notify him in writing by 2 April 1982 that his contract would not be renewed. However, rather than following this procedure, United Tribes' Executive Director circulated the 31 March memo apprising the instructors of the funding uncertainty and stating United Tribes was in no position, at that time, to offer any 1982–83 contracts, but would give notice "as soon as we feel that we can offer contracts." The memo put the reemployment on "hold" until further notice. No further notice was given, notwithstanding Lambott discussed his future employment with United Tribes' Dean of Education in July 1982.

The trial court concluded, as a matter of law, the 31 March memo adequately informed Lambott United Tribes was not offering to renew his contract, and that the memo "substantially complied" with the notice requirements of his contract.

■ The trial court's interpretation of the written contract language was a determination of law, not fact, and consequently it is fully reviewable by this Court. *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778 (N.D.1984); *Zitzow v. Diederich*, 337

N.W.2d 799 (N.D.1983); *Schulz v. Hauck*, 312 N.W.2d 360 (N.D.1981).

■ The function of the law of contracts is to attempt to realize the contracting parties' reasonable expectations that have been induced by the making of promises. Corbin *Contracts* § 1 (1963). Thus, a court's goal, when interpreting a contract, is to determine the intentions and expectations of the contracting parties. *See Johnson, supra;* § 9–07–03, N.D.C.C. The parties' intentions are to be ascertained, if possible, from the written contract alone, § 9–07–04, N.D.C.C.; *Metric Construction, Inc. v. Great Plains Properties*, 344 N.W.2d 679 (N.D.1984), and such determination is a question of law. *Zitzow, supra.*

Here, the written contract language delineated the specific procedure to be followed when an instructor such as Lambott was not to be rehired: The Dean of Education was to notify Lambott in writing by 2 April 1982 that his contract was not being renewed. Failure to give such notice constituted an offer to renew his contract.

■ While the provisions of the contract, especially the first sentence, could have been more clear, the expectations under the contract were clear and left little doubt of what was expected of the United Tribes. United Tribes was to follow the stipulated procedure when not rehiring Lambott. Because a contract is merely a promise, the performance of which the law recognizes as a duty, *Mag Construction Co. v. McLean County*, 181 N.W.2d 718 (N.D.1970), United Tribes could legally discharge Lambott only in accordance with the contractual terms. United Tribes failed to do this. Regardless of United Tribes' intentions in circulating the 31 March memo, that act alone did not satisfy its contractual duties to Lambott. Furthermore, the position of United Tribes toward Lambott was inconsistent, which additionally indicates United Tribes' breach. Lambott's 1981–82 contract terminated by its own accord on 18 August 1982. United Tribes' letter to Lambott on 20 August 1982 states his termination was effective 20 August 1982. This

position is inconsistent with Lambott's contract in that it appeared he continued in employment of United Tribes two days past the natural termination of his contract.

■ The trial court concluded the 31 March memo adequately informed Lambott his contract was not to be renewed and it "substantially complied" with the terms of his contract. We cannot agree. The written contract clearly enumerated the non-renewal procedure. United Tribes failed to abide by the procedure it had voluntarily bound itself to follow. While the trial court had the authority to interpret the contract, it did not have the prerogative to rewrite or modify it. *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101 (N.D.1982). Therefore, we conclude United Tribes breached its contract with Lambott.

■ United Tribes argued that even if it failed to comply with the contractual terms, and therefore offered to renew Lambott's contract, Lambott failed to accept this offer. Lambott's contract provided:

"On or before April third in any academic year, all Employees who have not been notified of the determination not to rehire shall be notified of a date, which shall not be less than twenty (20) days after the date of such notice, upon which they will be required to accept or reject pro-offered reemployment, and failure on the part of the Employee to accept said offer within such time shall be deemed to be a rejection of the offer."

It is true Lambott failed to accept or reject United Tribes' proffered reemployment. However, United Tribes failed to notify Lambott of the date by which he had to accept or reject this offer of continued employment. Lambott's duty to accept United Tribes' offer thus did not become operative and he cannot be deemed to have rejected United Tribes' offer.

■ United Tribes' final argument invoked the following provision of the contract:

"... [A]ny ... obligation incurred under this contract is contingent on the exist-

ence of Bureau of Indian Affairs funding for United Tribes."

It is undisputed United Tribes' continued BIA funding was, at best, problematic. United Tribes contended the uncertainty of its funding legally justified Lambott's non-renewal, irrespective of the contract's notice requirements. However, while United Tribes' BIA funding was certainly in doubt, it never ceased to exist. In fact, subsequent to Lambott's discharge, United Tribes was funded at a level comparable to its previous years.

■ The proper measure of Lambott's damages is the salary guaranteed by his contract less what he earned, or, by the exercise of reasonable diligence, he could have earned, in seeking other similar employment subsequent to his wrongful termination. *Selland v. Fargo Public School District No. 1*, 302 N.W.2d 391, 393 (N.D. 1981); see also § 32–03–09, N.D.C.C. Therefore, following United Tribes' breach of his contract, Lambott had the obligation to make every reasonable effort to minimize his damages by exercising ordinary diligence to procure other employment. *Vallejo v. Jamestown College*, 244 N.W.2d 753, 759 (N.D.1976).

Accordingly, we reverse the district court's decision and remand this case to the district court for a determination of Lambott's damages.

PER CURIAM.

The foregoing opinion was principally prepared by the Honorable Paul M. Sand, Justice, before his death. It is adopted by the undersigned as the opinion of this Court.

ERICKSTAD, C.J., GIERKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.