Francis ABERLE, Plaintiff and Respondent,

v.

NORTH DAKOTA B & B PERMANENT AND TEMPORARY PERSONNEL SYSTEMS, INC., Defendant and Appellant.

Civ. No. 8645.

Supreme Court of North Dakota.

April 22, 1971.

Solberg, Anderson & Stewart, Fargo, for defendant and appellant.

Kruger & Yuill, Fargo, for plaintiff and respondent.

TEIGEN, Judge.

This is an action seeking damages for breach of contract. The case was tried to the court without a jury, judgment was entered in favor of the plaintiff, and the defendant has appealed, demanding trial de novo in this court.

The defendant, North Dakota B & B Permanent and Temporary Personnel Systems, Inc. (hereinafter referred to as B & B), according to its franchise agreement "HAS DEVELOPED and created systems for the operation of Permanent Personnel Systems," commonly known as an employment agency. In addition to operating its own employment agencies, B & B also grants exclusive agencies, termed "exclusive franchises," to others to engage in a business similar to that of B & B. The franchise grants "the exclusive right to B & B's techniques, training, continued guidance, Executive Employer and Executive Applicant information exchange, and the right to feature 'Affiliate of B & B Permanent Personnel Systems, Consultants to Management, Executive Consultants and Recruiters' * * *" The contract titled "EXCLUSIVE FRANCHISE" was finalized between the plaintiff (hereinafter referred to as Aberle) and B & B on October 25, 1967. The agreed franchise fee was $10,000. The franchise provides that the business is to be based in Fargo, Cass County, North Dakota. The business operations under the franchise began in October 1967. Under the franchise B & B agreed to furnish Aberle "A complete training program for the Franchisee which includes training in Permanent Personnel System management at B & B's Training Center or in Franchisee's office (B & B's option)." The contract states that the training program includes instruction in:

A. Selection of office site and lay-out.

B. Selection of equipment.

C. Recruiting of personnel.

D. Advertising, marketing procedures.

E. Recruiting of accounts.

F. Recruiting of applicants.

G. Credit and collections.

H. Financing program and procedures.

I. Recruiting of both continuing accounts and applicants.

It also provides that B & B is "under a continuing obligation to render advice, training and guidance * * *" Aberle claims that B & B failed to furnish the training, advice and guidance contemplated by the contract and that, therefore, he became disenchanted, closed the office, and discontinued the operation under the franchise in late November or early December 1967. B & B apparently continued the operation and ultimately secured another person with whom they have now contracted to operate the business.

The trial court found that B & B contracted to completely train and to continually guide Aberle in a business with which he was wholly unfamiliar, and that B & B must have foreseen that with Aberle's educational background and experience, and with his intellectual and emotional endowments, he could not succeed without a thorough training program and constant advice and counsel, particularly in the initial stages of the admittedly complex enterprise; that B & B failed to provide a complete training program as contemplated by

the contract and, therefore, B & B breached its contract to fully train and guide Aberle. The court concluded that Aberle had been damaged in the sum of $5,000, which is the amount he had paid the defendant as a partial consideration for the franchise, plus $433 for expenses incurred as a result of the enterprise, and entered judgment against B & B in the amount of $5,433, plus interest and costs. It also dismissed B & B's counterclaim on a promissory note in the amount of $5,000, which had been given for the balance of the franchise fee, on the ground of failure of consideration.

We agree with the trial court. A review of the record reveals that after the contract was entered into Aberle established an office with two employees in the city of Fargo pursuant to the terms of the franchise. When the office was opened in October 1967, B & B sent a representative, Miss Joan Minke, to train Aberle and his employees in the techniques of the business. Miss Minke had been employed by B & B for a period of only three months. She spent two and one-half days with Aberle and his staff. In addition, B & B furnished Aberle with training manuals and wrote a series of letters containing instructions to him. These manuals and letters involved accounting, bookkeeping, advertising, collection methods, and guidance in the techniques of the employment agency business. Some weeks later Miss Minke, in addition to her initial training period, returned to Fargo where she spent one day in giving additional training. Aberle was also sent to B & B's Minneapolis office affiliation where he received one day of instruction. It appears that it was the intention of B & B to send a Mr. Lord, a more experienced person, to Fargo to carry on the training program; however, he became ill and Miss Minke was sent in his place. During the period of approximately six weeks of operation, Aberle sought additional training and guidance on several occasions but the same were not furnished

except in the form of letters of instruction and reference to the manuals.

■ At the trial the parties and their witnesses appeared in person and testified. The trial court had an opportunity to hear the testimony and to observe the demeanor of the witnesses and the various incidents of the trial which are not shown by the cold and lifeless record. The training manuals were not received in evidence. The trial court had the advantage of breathing the air of the trial and was in an immeasurably better position to find the real facts than we are from the cold record. Notwithstanding that the appeal is here for trial de novo, we must give appreciable weight to the determination of the trial court. Seco, Inc., v. Gauvey Rig & Trucking Company, 166 N.W.2d 397 (N.D.1969); Hillius v. Wagner, 152 N.W.2d 468 (N.D. 1967); Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966); Pauly v. Haas, 84 N.W.2d 302 (N.D.1957).

Mr. Mitchell and Mr. Williams, president and vice-president, respectively, of B & B, testified. The plaintiff Aberle, his wife, and the two employees also testified. It appears that in August 1967 B & B placed advertisements in a Minneapolis newspaper to which Aberle responded. Subsequently, Aberle was invited for an interview. He was interviewed by Mr. Mitchell and Mr. Williams, president and vice-president, respectively, of B & B, and by Mr. Lord and Mr. Robinson, also of B & B. During this interview Aberle filled out an application form for the purpose of presenting pertinent information relative to his qualifications as a B & B personnel system licensee. In addition, he was given the Dearborn Aptitude Test and was given the opportunity to read and study B & B's franchise agreement. Subsequent to this interview and on August 29, 1967, Aberle was again contacted by Mr. Lord and notified that he had been accepted for the franchise program. He then paid B & B $1,000 as an initial payment on the franchise and signed

an Offer of Agreement. A month later, on September 29, 1967, Aberle received a telephone call from President Mitchell requesting him to come to his office. At the conference which followed Aberle paid an additional $4,000 toward the $10,000 franchise fee. He also signed a promissory note for the $5,000 balance. B & B accepted Aberle's Offer of Agreement on October 25, 1967. Thus the franchise came into existence.

■ On the basis of the testimony, the trial court found "that the defendant must have foreseen that with the plaintiff's educational background and experience and his intellectual and emotional endowments that he could not succeed without a thorough training program and constant advice and counsel, particularly in the initial stages of this admittedly complex enterprise." Giving appreciable weight to the findings of the trial court, we find that the evidence sustains this finding. Under the circumstances, the training program furnished did not comply with the contract provision that B & B shall furnish "a complete training program for the franchisee * * *" The trial court was in a much better position to evaluate the intellectual and emotional endowments of Aberle, and to determine the amount and kind of training necessary to carry out the terms of the contract, than we are from the cold record, and we accept the trial court's findings. The failure to give a complete training program as contemplated by the contract constituted a breach of the contract and a failure of consideration for the promissory note given for the unpaid balance.

For the reasons aforesaid, we affirm the judgment of the trial court.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.