**In re James DeROSA and Roberta DeRosa, Debtors.**

**James DeROSA and Roberta DeRosa, Plaintiffs,**

v.

**BOSTON BAKERY & ITALIAN FOOD SPECIALTY, INC. and Carl DiStefano, Defendants.**

**Bankruptcy No. 8700054.
Adv. No. 870077.**

United States Bankruptcy Court,
D. Rhode Island.

March 29, 1989.

---

Joseph S. Votta, Jr., Votta & Votta Law Offices, Ltd., Providence, R.I., for debtors.

David A. Schechter, Providence, R.I., for defendants.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 7, 12, 13, and 14, 1988, on the complaint of the debtors, James and Roberta DeRosa, who are seeking rescission of the franchise agreement entered into with the defendants, Boston Bakery & Italian Food Specialty, Inc. and Carl DiStefano.[1] The plaintiffs' complaint is in seven counts, but based on the facts as they appear in our findings below, our ruling on the breach of contract claim (Count two) is dispositive.[2]

### FINDINGS OF FACT [3]

1. That the parties, after a casual meeting in March, 1986, at which they struck up a social relationship, mutually agreed to begin discussions and negotiations regarding the establishment of Mr. DeRosa in the bakery business, as a franchisee of Mr. DiStefano. Although he denies it, we find that Mr. DiStefano, with more than 20 years sales experience, talked the plaintiffs into buying his franchise.[4]

2. That a franchise agreement was proposed and structured by Mr. DiStefano, which was executed on June 6, 1986.

3. That this was a "boilerplate" agreement, commonly used by nationally, or at least regionally recognized franchisors, a status not enjoyed by Mr. DiStefano. He operates a local bakery, and this was his

---

1. Carl DiStefano is the principal and sole shareholder of Boston Bakery & Italian Food Specialty, Inc., and he represented the company in all of its dealings with the plaintiffs. Throughout this opinion, for simplicity, we will refer to the defendants as "DiStefano."

2. We will defer consideration of the remaining counts, until a later time, if needed. (Counts three and seven were dismissed during trial.)

3. This opinion constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

4. For instance, Mr. DiStefano told the DeRosas that he had "the best product," that he was "the best damn baker in all New England" and that the DeRosas "could make 100% profit on everything they sold." These representations induced the plaintiffs to do business with Mr. DiStefano,

first franchise.[5]

4. That DeRosa paid DiStefano $15,000 for the right to use the "Franchisor's mark." Since the Boston Bakery was and is not a recognized franchisor with any ascertainable value per se (it had no franchises), the $15,000 fee had to be for whatever advice, assistance, and counsel the plaintiffs were to receive from the DiStefanos.

5. That the franchise agreement (Plaintiffs' Exhibit No. 5) set forth the conditions and obligations of the parties, including: "Location of Unit" (Section Three), "Continuing Supervision and Assistance" (Section Four), and "Food Products to be Sold" (Section Six).

6. That the section entitled "Location of Unit" provides that "[a]ll equipment which is necessary to furnish and equip the Franchisee's place of business *shall* be purchased through the Franchisor under terms and conditions set forth by the Franchisor at the time of purchase." (Plaintiffs' Exhibit No. 5, section 3) (emphasis added).

7. That while the parties were negotiating the agreement, DiStefano represented to DeRosa that he would make little or no profit on the purchase of the equipment, and that the procurement of the equipment was one of the services he was furnishing the DeRosas—i.e. "a favor."

8. That DeRosa paid $17,810 to DiStefano for the equipment he purchased.

9. That DiStefano paid $12,510 for said equipment, and made an (undisclosed) profit of $5,300.

10. That pursuant to the franchise agreement, the plaintiffs were required to and did furnish and decorate their store as required by the DiStefanos, at a cost of $3,024.45.[6]

11. That section four of the franchise agreement entitled "Continuing Supervision and Assistance" provides that "Franchisor shall maintain a bona fide interest in the success of Franchisee's business during the term of this agreement and shall provide the following:

1. Regular reports of improvements in business methods developed by Franchisor and other Franchisees, if any;

2. The services of Franchisor's advertising to assist Franchisee;

3. On Franchisee's request, the personal assistance and counsel of a qualified representative of Franchisor."

12. That the two week period of assistance and supervision provided by the DiStefanos during the start-up of plaintiffs' business was clearly insufficient, and not in accordance with the franchisor's obligations under the agreement.

13. That the defendant failed to provide any effective advertising for the plaintiffs' store, and, consequently, plaintiffs were forced to advertise at their own expense.[7]

14. That the DeRosas requested assistance and advice from the defendant on numerous occasions, but no meaningful help was given.[8]

15. That the defendant, instead of providing the DeRosas with "reports of improvements in business methods," watched the new business deteriorate, and finally delivered a self-serving letter purporting to establish "franchise policies," for the first time in September 1986, which policies, incidentally, were not included in the franchise

rather than going into other, more conservative, ventures they were considering.

5. The defendant did enter into a second franchise in September 1986, with a neighbor, the same month that the plaintiffs were closing their store. Like the DeRosas, this franchise also only lasted "a few months," until the defendant closed it down because he "didn't like the way Billy [Pandozzi] was operating it." Here again, DiStefano charged a $15,000 franchise fee and made "profits" on the equipment purchased.

6. Plaintiffs were required to purchase a rug and mural similar to the defendants, and to have identical signs.

7. *See* Plaintiffs' Exhibit Nos. 43, 44, and 45 (check nos. 1010, 1013, 1015, 1030, 1039, 1057, 1071 and 1084).

8. What little assistance or supervision the defendant provided the DeRosas was clearly insufficient, given their total lack of expertise in the bakery (or any other) business, in fact with which defendant was fully aware.

agreement. (*See* Plaintiffs' Exhibit No. 11.) [9] Other than this letter, no materials such as operation manuals or business assistance guides, were provided to the plaintiffs.

16. That section six of the agreement "Food Products to be Sold" provides that "[a] full line of the products identified with Franchisor's system shall be available to Franchisee." [10]

17. That the defendant did not make available to the plaintiffs a full line of products, as represented, but instead provided only the items the defendant's bakers, in their discretion, decided to prepare that day.

18. That much of the product delivered to the plaintiffs was of poor quality. For example, the DeRosas often received pastry that was irregular in size or appearance, burnt, other than what they ordered, or generally not visually appealing to the plaintiffs' retail customers. (*See* Plaintiffs' Exhibit No. 10.) After visiting the defendant's store, and comparing it with the product being provided by the DiStefanos, the DeRosas concluded that they were being given day old pastry and/or the DiStefanos' rejects. Almost from the beginning, the plaintiffs lost sales and customers, due to the failure of the defendant to meet its basic franchise obligations.

19. That the plaintiffs received numerous complaints from customers and had to make refunds for and accept returned items, because of inferior product, but these comments, when passed on to the DiStefanos, fell on deaf ears. [11] In this regard, we find that Mr. DiStefano's initial sales talents in selling the franchise to Mr. DeRosa greatly exceeded the quality of the product and services he provided thereafter.

20. That plaintiffs' daily orders were usually delivered late, which delayed the store's opening and caused the DeRosas to lose sales, and in turn, customers.

21. That the evidence is conflicting in many areas, and we find that the plaintiffs, although not nearly as articulate or as glib as the defendant and his witnesses, are more credible, and we accept the DeRosas' testimony.

22. Mr. DiStefano had numerous, selective memory lapses regarding many important, relevant and specific facts, and in general his testimony was not credible. Consequently, all disputed issues of fact should be, and are resolved against the defendant.

23. That when the DeRosas, after failing to make any profit or even to generate sufficient sales to take home a pay, [12] asked the DiStefanos for help in early September, DiStefano's proposed solution was to offer to buy the business from the plaintiffs for a fraction of their recent investment. [13]

## CONCLUSIONS OF LAW

1. A contract may be rescinded where there is fraud in the inception, or

---

9. For instance, in the September 1986 letter (Plaintiffs' Exhibit No. 11), the defendant, for the first time, stated that only two color trims (pink and blue) were available on cakes. Previously, Mr. DeRosa had ordered a cake for a customer in a different color trim, and received it in the wrong color. The customer was dissatisfied and returned the cake. When so advised, Mrs. DiStefano stated cavalierly that "the cake is just as edible." A legitimate franchisor is sensitive to the customer satisfaction of its franchisees. DiStefano was totally lacking in such sensitivity—in fact the evidence points strongly to the likelihood that DiStefano looked forward to picking up his franchisee's failed operation, at a fraction of its cost, and after taking an obscene, secret profit on the equipment purchase.

10. A complete product list was provided to the DeRosas. *See* Plaintiffs' Exhibit No. 15.

11. Whenever Mr. DeRosa complained to the defendant about the poor quality of the product he was receiving, or of customer complaints, he was always told to "turn the pastry more."

12. In the three months that the plaintiffs operated the bakery, they never once took home a pay. In order to survive financially, the DeRosas cashed in their IRA's, using the money to pay their mortgage, car payments, and living expenses.

13. The DeRosas paid a $15,000 franchise fee, $17,810 for equipment, and over $15,000 for improvements, for a total of $48,000. When the business failed, DiStefano said he wanted to "help plaintiffs out" by offering to pay them $15,000 for the entire operation.

where there is a substantial breach. *CBS, Inc. v. Merrick,* 716 F.2d 1292, 1296 (9th Cir.1983); *In re Best Film & Video Corp.,* 46 B.R. 861, 873 (Bankr.E.D.N.Y.1985); *McAlpine v. Aamco Automatic Transmissions, Inc.,* 461 F.Supp. 1232, 1249 (E.D.Mich.1978).

■ 2. A substantial breach occurs where the essential objects of the contract are destroyed or where the breach is so "fundamental and pervasive as to result in substantial frustration." *In re Best Film & Video Corp., supra,* at 873 (citing *In re Waterson, Berlin & Snyder Co.,* 48 F.2d 704, 709 (2d Cir.1931)); *see also In re Fahnders,* 66 B.R. 94 (Bankr.C.D.Ill.1986) ("The breach must be material, that is, it must be so important that it vitiates or destroys the entire purpose for entering into the contract" *Id.* at 95–96).

3. "Whether a breach is material is a question of degree and determined in light of the circumstances of the case." *In re Fahnders, supra,* at 96 (citations omitted). The court should not view any breach of contract in isolation, but rather must consider the totality of breaches and overall effect on the purpose of the contract on the nonbreaching party. *In re Best Film & Video Corp., supra,* at 873.

■ 4. Here, the defendant's performance in assisting the DeRosas fell far short of his obligation under the contract, and this constituted a material breach. As we indicated earlier, *see* p. 646 ante, the two week supervision period was woefully inadequate to train the DeRosas, who had no prior experience in any business ventures, let alone a retail bakery operation.

As was the case in *Aberle v. North Dakota B & B Perm. & Tem. Pers. Sys.,* 186 N.W.2d 446, 447 (N.D.1971), where the franchisor contracted to train and guide the franchisee in a business with which he was totally unfamiliar, the court found the "B & B [the franchisor] must have foreseen that with Aberle's [the franchisee] educational background and experience, and with his intellectual and emotional endowments, he could not succeed without a thorough training program and constant advice and counsel, particularly in the initial stages of the admittedly complex enterprise." *Id.* at 447. The *Aberle* case is very much in point. To Mr. DeRosa, with no prior business experience of any kind, the management responsibilities were complicated and substantial, and possibly overwhelming. The DiStefanos, who were familiar with Mr. DeRosa's background,[14] were also aware of his need for constant advice and intensive assistance during, at the very least, the early months of operation.

5. The defendant's procurement of equipment at a substantial, undisclosed, profit is a breach of the franchise agreement and contrary to the oral representation of Mr. DiStefano. Whereas the franchise agreement provides that the terms and conditions of the purchase of the equipment would be "set forth by the franchisor at the time of purchase," DiStefano's statement to DeRosa that he would make "little or no profit" on the purchase represents such a term or condition. On the facts before us, we find that a 30 percent profit[15] amounts to gouging, and when coupled with the fact that the amount of said profit was not supposed to come to the attention of the franchisee, the defendant's conduct is unconscionable.

6. In addition, we find that the defendant breached section six of the agreement by his failure to provide a complete line of products as represented, and by selling inferior products to the plaintiffs at top quality prices. DiStefano's conduct in providing burnt, day old, and irregular sized pastry, as well as making late deliveries of items, often different than as ordered, also constitute breaches of the franchisor's contract obligations. *In re Best Film & Video Corp., supra,* at 873; *see also McAlpine, supra,* ("Such conduct violates a promise of good faith and fair dealing by the franchisor who owes a duty not to intentionally destroy the right of the existing franchisee

---

14. For eight years prior to entering into this venture, Mr. DeRosa was employed as an oil rigger. Previous to that he had worked as a mechanic for "almost all of his life."

15. We rounded off the figure of 29.758% to 30%.

to enjoy the fruits of the contract" *Id.* at 1249).

7. The totality of these breaches requires that the plaintiffs be granted the relief requested—rescission of the contract. When considered together, the failure to render necessary assistance, the secret extraction of an unreasonably high commission on equipment purchased, the late deliveries, the furnishing of inferior products, and the failure to deliver items on the product list, clearly constitute material breaches of the franchise agreement. The defendant's contention that the business failure was due to the plaintiffs' laziness, unwillingness to work, or family troubles, is completely unsupported by any credible evidence, and is rejected. The defendant's attempt to shift the responsibility for the failure of the business is a red herring.

8. Based on all of the foregoing, it is ordered that the franchise agreement dated June 6, 1986, be and hereby is rescinded, and that the plaintiffs are entitled to recover both restitution and reliance damages. *See CBS, Inc., supra,* at 1296. Restitution damages consist of: (1) $15,000 franchise fee; (2) $12,800 for the equipment (the $17,810 paid for the equipment is reduced by the salvage value of $5,100); and (3) $8,542.24 spent on improvements and operation of the business (these might also fall into the category of reliance damages).[16] Defendant, therefore, is ordered to pay the plaintiffs a total of $36,342.24 as restitution and reliance damages for his breach of the franchise agreement. Since the purpose of rescission is to "restore both parties to their former position as far as possible" and to "bring about substantial justice by adjusting the equities between the parties," *Runyan v. Pacific Air Industries,* 2 Cal.3d 304, 85 Cal.Rptr. 138, 466 P.2d 682, 41 ALR3d 1422, 1433 (1970) (other citations omitted), the defendant, after complying with this Court's monetary award to the DeRosas, is deemed the owner of the assets purchased by the plaintiffs for their, now defunct, franchise.

Enter Judgment accordingly.

**16.** In calculating this amount, we credited the plaintiffs for expenses legitimately incurred during the operation of the franchise, including net wages, and then reduced these costs by the income they received over the 2½ month period. The expenses and income we accepted are set forth in Appendix A hereto.

APPENDIX A

Expenses

| Check No. | Amount | Purpose |
| --- | --- | --- |
| 93 | $ 41.32 | 3 base sink |
| 94 | 200.00 | phone deposit |
| 96 | 84.27 | Grossman's |
| 99 | 625.00 | Outside sign—½ payment |
| 1001 | 278.42 | rest of sink & supplies |
| 1002 | 479.34 | refrigerator |
| 1004 | 115.00 | supplies |
| 1005 | 84.54 | paint (mural) |
| 1007 | 300.00 | gas |
| 1008 | 300.00 | electric |
| 1009 | 101.74 | door |
| 1011 | 668.08 | rug |
| 1012 | 56.82 | supplies |
| 1018 | 325.00 | plumbing (move sinks) |
| 1021 | 625.00 | sign |
| 1022 | 65.70 | doorbell |
| 1025 | 72.92 | paint |
| 1026 | 156.75 | move 3 door freezer |
| 1028 | 40.00 | supplies |
| 1032 | 226.03 | repair of freezer |
| 1033 | 175.00 | install larger hot water heater |
| 1034 | 174.90 | pan rack |
| 1035 | 102.97 | supplies |
| 1044 | 308.45 | shades for front windows |
| 1047 | 59.84 | supplies |
| 1048 | 36.02 | dust buster |
| 1049 | 42.47 | supplies |
| 1052 | 150.37 | lighting materials |
| 1058 | 630.20 | counter scale |
| 1064 | 640.00 | electric |
| 1073 | 50.10 | state sales tax |
| 1024 | 42.00 | supplies |
| 1031 | 20.00 | supplies |
| 1037 | 66.99 | supplies |
| 1038 | 40.00 | supplies |
| 1041 | 74.69 | supplies |
| 1042 | 46.64 | supplies |
| 1046 | 25.91 | supplies |
| 1059 | 45.84 | supplies |
| 1060 | 60.20 | supplies |
| 1061 | 67.32 | supplies |
| 1066 | 97.51 | supplies |
| 1074 | 53.40 | supplies |
| 1075 | 300.00 | supplies |
| 1076 | 91.20 | supplies |
| 1082 | 53.58 | supplies |
| 1085 | 15.69 | supplies |
| 1010 | 211.64 | advertising |
| 1013 | 64.13 | advertising |
| 1015 | 176.60 | advertising |
| 1030 | 39.00 | advertising |
| 1039 | 42.00 | advertising |
| 1057 | 58.30 | advertising |
| 1084 | 27.00 | advertising |
| 1071 | 60.00 | advertising |
| 1043 | 85.38 | phone |
| 1077 | 109.56 | electric |
| 1079 | 74.59 | phone |
| 1089 | 6.05 | gas |

| Check No. | Amount | Purpose |
|---|---|---|
| 1053 | $ 50.00 | supplies |
| 1054 | 136.00 | sink |
| 1068 | 547.90 | rug, door |
| 1086 | 25.00 | tiles |
| 1087 | 131.00 | tiles, rug, sink |
| 91 | 60.00 | licenses |
| 1023 | 5.00 | license |
| 1027 | 60.00 | license |
| 1795 | 525.00 | insurance |
| 1065 | 525.00 | insurance |
| 1016 | 900.00 | rent |
| 1067 | 900.00 | rent |
| 1080 | 80.00 | waste disposal |
| 1040 | 1580.44 | supplies from Boston Bakery |
| 1050 | 1700.00 | supplies from Boston Bakery |
| 1063 | 1400.00 | supplies from Boston Bakery |
| 1072 | 1316.75 | supplies from Boston Bakery |
| 1078 | 1260.00 | supplies from Boston Bakery |
| 1083 | 1100.00 | supplies from Boston Bakery |
| 1091 | 1113.65 | supplies from Boston Bakery |
| Exhibit 18A | 900.85 | supplies from Boston Bakery |
| Exhibit 18B | 943.20 | supplies from Boston Bakery |
| Exhibit 18C | 935.10 | supplies from Boston Bakery |
| Exhibit 20 | 504.83 | net payroll July to September |
| TOTAL EXPENSES— | 25,971.19 | |

INCOME

| | | |
|---|---|---|
| July | $6,100.00 | |
| August | 7,364.16 | Tr. Exhibit 19 |
| September | 3,964.79 | Tr. Exhibit 19 |
| TOTAL INCOME— | $17,428.95 | |

TOTAL COST OF OPERATION

$25,971.19
−17,428.95
$ 8,542.24