**In re Arthur REPOSA, Peter Reposa, Debtors.**

**Louis A. GEREMIA, Trustee Arthur Reposa and Peter Reposa, Plaintiffs,**

v.

**NORTH ATLANTIC FISHING, INC. and Herbert Lee, Defendants.**

**Bankruptcy Nos. 85–00579, 86–00060. Adv. No. 87–0021.**

United States Bankruptcy Court, D. Rhode Island.

Nov. 14, 1991.

William Y. Chaika, Chaika & Chaika, Cranston, RI, for Arthur Reposa.

Thomas S. Hemmendinger, Strauss, Factor, Hillman & Lopes, Providence, RI, for North Atlantic Fishing, Inc. and Herbert Lee.

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, PA, Harold Demopulos, Demopulos & Demopulos, Providence, RI, for Mellon Bank.

Louis A. Geremia, Cuzzone, Geremia & Civittolo, Providence, RI, Trustee.

Thomas H. Quinn, Jr., Quinn Schechtman & Teverow, Providence, RI, for Peter Reposa.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On remand from the appeal of our Decision and Order dated December 29, 1988, the District Court, Pettine, Senior J., directs us to: (1) recalculate damages to comport with that Court's rulings as to foreseeability and proximate cause; (2) articulate the reasons for our denial of the Reposas' Complaint to Determine Validity of Liens

held by North Atlantic Fishing, Inc.;[1] and (3) determine whether Mellon Bank's legal fees should be based upon the terms of the guaranty, or according to the note. We respond to the District Court's directions as follows:

## I. FORESEEABILITY AND PROXIMATE CAUSE

### A. COMPENSATORY DAMAGES

We had initially found that Herb Lee fraudulently misrepresented the condition of the fishing vessel, Wilfreta Lee, thereby inducing the Reposas to purchase it, and that Lee/NAF were liable for the damages proximately resulting from said fraudulent misrepresentations. We also held, however, that the intervening negligence of Marty's Marine in making repairs to the vessel was not foreseeable, and that Lee/NAF were not responsible for the additional damages sustained as a result of Marty's negligence. The District Court reversed on this point, stating: "it was certainly foreseeable that the engine would fail and need repair," and "that such repair might be negligently completed." The District Court concluded therefrom, as a matter of law, that Lee/NAF's liability was not cut off by Marty's negligence.

### 1. Detention Damages

■ It was our original conclusion that the plaintiffs' damages included detention costs (resulting from "down time" while the vessel was being repaired), and that Lee/NAF were liable in the amount of $7,125 for the period from the first mechanical failure, July 28, 1984, to August 17, 1984, when Marty's Marine completed its repair work.[2] We estimated these de-tention costs to be $339.29 for each day the vessel was disabled. (There are 21 days from July 28 to August 17, 1984, and $7,125 divided by 21 = $339.29 per diem.) In light of the District Court's ruling that Lee/NAF's liability is not cut off by the negligence of Marty's Marine, the detention costs must be increased by an additional 99 days, from August 17 to November 24, 1984, when Giles & Ransome Inc. finished its repairs, to fix what Marty's had done incorrectly. The recalculated detention damages amount to $33,589.71 (99 × $339.29 = $33,589.71). Accordingly, Lee/NAF's total obligation for detention damages is $40,714.71 ($7,125 + $33,589.71 = $40,714.71).

### 2. Repair Costs

■ We have also been instructed to recalculate the repair costs to be assessed against Lee/NAF. The Reposas paid Marty's $9,000. They also paid Giles & Ransome, Inc. $28,562.69 to correct the damage caused by Marty's negligent repair work.[3] In addition, Giles & Ransome has filed a proof of claim in the amount of $11,117.61, for the unpaid balance of its repair bill. Accordingly, per the remand order, we recompute Lee/NAF's liability for compensatory damages to be $89,395.01 ($40,714.71 detention damages, plus $48,680.30 repair costs).

### B. PUNITIVE DAMAGES

We had also concluded that Lee's conduct was so egregious as to require an award of punitive damages, which we set at $160,000. The District Court has instructed this Court to consider whether the mandated increase of Lee/NAF's compen-

---

**1.** For convenience we will refer to Herbert Lee and/or North Atlantic Fishing, Inc. as Lee/NAF, where appropriate.

**2.** $7,125 is the amount of the mortgage payments the Debtors made to Lee and Mellon Bank between July 28, 1984 through August 17, 1984.

**3.** Although the Debtors were paid by Marty's insurance carrier for damages resulting from the negligent repair of their vessel, this does not reduce Lee's liability. Benefits received by a plaintiff from a source wholly independent of and collateral to the wrongdoer do not diminish the damages otherwise recoverable from the wrongdoer. ("collateral source rule," Restatement, Torts 2d 920A, 22 Am.Jur.2d 566, *Soucy v. Martin,* 121 R.I. 651, 402 A.2d 1167 (1970), *Reilly v. United States,* 863 F.2d 149, 161 (1st Cir. 1988). An insurance policy maintained by a third party is a collateral benefit. (Restatement, Comment C, *see also Colvin v. Goldenberg,* 108 R.I. 198, 273 A.2d 663 (1971)).

satory liability should affect the punitive damage award.

"The purposes of awarding punitive damages ... are to punish the person doing the wrongful act and to discourage him and others from similar conduct in the future." Restatement (Second) of Torts, § 908 comment (a) (1979); *see also Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983) (Punitive damage awards must carry out society's interest in deterring and punishing a wrongdoer's intentional or reckless disregard for the rights of others.); *Fishman v. Clancy*, 763 F.2d 485, 490 (1st Cir.1985).

■ The harm to the injured person is also a factor courts consider in assessing punitive damages. Restatement (Second) of Torts, § 908 comment (e) (1979). In our prior decision, we did specifically consider the extent of the monetary harm caused by Lee to the Debtors, in assessing a punitive damage award. As a result of the District Court's instructions, however, the monetary award has been increased by approximately 400%, from $22,125 to $89,395. Accordingly, an increase in our original punitive damage award appears to be in order, to comply with the District Court's directions on remand.

■ We have already concluded that, but for Lee's fraud, the Debtors would not have purchased the vessel (and certainly not at the agreed upon purchase price), and that Lee's conduct was a direct cause of the financial ruin of the Debtors. To assure that the sale took place, Lee/NAF financed a part of the purchase price, and as security took mortgages on the Debtors' homes. Ironically, the Reposas are now facing the loss of their homes to the person whose fraud caused their personal bankruptcies. In the circumstances, on reconsideration, we now hold that the appropriate measure of punitive damages is the amount of Lee/NAF's proof of claim, less the compensatory damages assessed above, *i.e.* $423,555.65 − $89,395.01 = $334,160.64 punitive damages. This result, we think,

comports with the spirit of the District Court order, as well as with the rationale of awarding punitive damages, and in the instant case prevents the wrongdoer from benefiting (to the further detriment of his victims) from his own tortious conduct.[4]

## II. DENIAL OF REPOSAS' COMPLAINT TO DETERMINE VALIDITY OF LIEN

■ The Reposas requested that this Court declare invalid, through the equitable remedy of rescission, Lee/NAF's liens against their personal residences. The District Court directs us to articulate the reasons for our denial of that request for relief. Our reasoning was as follows:

"A 'rescission' amounts to the unmaking of a contract, or the undoing of it from the beginning, and not merely a termination...." Black's Law Dictionary at 1174 (5th Ed.1979) (citations omitted). Although rescission may be granted even if the status quo cannot be exactly restored, *Runyan v. Pacific Air Industries*, 85 Cal. Rpt. 138, 147, 466 P.2d 682, 691 (1970), the court should "restore both parties to their former position as far as possible." *DeRosa v. Boston Bakery*, 98 B.R. 644, 649 (Bankr.D.R.I.1989). Because the Chapter 7 trustee had sold the vessel prior to the filing of our December 28, 1988 decision, we found the circumstances not appropriate for rescission.

However, the effect of our rulings on remand is that the entire amount of Lee/NAF's proof of claim is now offset by the punitive and compensatory damage awards as discussed above. Since there is no longer an underlying debt to be secured by the Lee/NAF mortgages, said liens should be and hereby are removed, for that reason. *See* R.I.Gen.Laws § 34-26-2 (1956); *William F. Kelley v. Medeiros (In re Kelley)*; 131 B.R. 532, 533 (Bankr.D.R.I.1991).

### III. ATTORNEY FEES

■ On May 11, 1984 the Debtors executed both an Assumption of First Pre-

---

**4.** It should be kept in mind that Lee/NAF's secured claim is not based upon money advanced, nor is it based on any objectively quantifiable consideration. Rather, said claim represents only Lee's personal valuation of the vessel,

which of course turned out to be grossly overstated. The Reposas paid $665,000, while the Trustee was able to sell it for only $425,000, even after extensive repairs.

ferred Mortgage, and a Guaranty. Under the former, the Debtors assumed the note originally executed by Lee/NAF and the Bank, and under the latter they guaranteed the note. The note calls for attorney fees up to 18%, while the guaranty limits such fees to 5% of the amount due. Pursuant to § 506(b), Donald M. Collins, Esq. and Harold W. Demopulos, Esq., co-counsel for Mellon Bank, requested $77,839 for legal services. The Debtors and the Trustee opposed both applications on the ground that they were excessive. We agreed with the objectors, and determined compensation in the amount of $35,000 to be reasonable. *See In re Reposa*, 94 B.R. 257 (Bankr. D.R.I.1988). On remand, however, we are directed to make a ruling as to whether the fee cap in the guaranty, or the note assumed by the Reposas, governs the amount of legal fees that may be awarded.

It is well settled common law that ambiguous or conflicting contract terms should be construed against the drafter. *See Corso v. Creighton University*, 731 F.2d 529, 533 (8th Cir.1984); *Fryzel v. Domestic Credit Corp.*, 120 R.I. 92, 385 A.2d 663, 666 (1978); *Commonwealth v. Quandel Company*, 137 Pa.Cmwlth. 252, 585 A.2d 1136, 1142 (1991); Restatement (Second) of Contracts § 206 (1979). It would seem to follow logistically that this principle is applicable and therefore should be extended to the ambiguity/conflict existing between the terms of the note and the guaranty. Because Mellon Bank drafted the documents in question (and construing the ambiguity against the drafter), we conclude that the guaranty sets the limit of allowable attorney fees. We could not find, nor did the applicants cite to any authority that would resolve this question differently. Accordingly, after a review of the relevant documents and the applicable law, we conclude that attorneys' fees in this instance are limited to 5% of $314,845.96, or $15,742.30.

Enter Judgment consistent with this opinion.